**MOLER et al.**

v.

**BEACH, Appellee; Nationwide Insurance Company, Appellant.**

[Cite as *Moler v. Beach* (1995), 102 Ohio App.3d 332.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 94–CA–88.

Decided March 31, 1995.

*Hogue & Miles* and *Forrest J. Hogue,* for Fannie M. Moler.

*Jenks, Surdyk & Cowdrey Co., L.P.A.,* and *Arden Lynn Achenberg; Kenneth O. Huntington,* for appellee Beach.

*Bieser, Greer & Landis* and *James P. Nolan II,* for appellant.

FREDERICK N. YOUNG, Judge.

Nationwide Insurance Company (appellant) is appealing from the judgment of the Common Pleas Court of Greene County, Ohio, which overruled an objection filed by the appellant to the report and recommendations of the referee and adopted the referee's report and recommendations as its own, including a specific finding of fact by the referee made in response to an interrogatory submitted to the referee by the appellant. Because we find no abuse of discretion by the trial court, the judgment will be affirmed.

This case arises out of an incident which occurred during an ongoing dispute between neighbors about a common boundary line. The dispute, unfortunately, turned somewhat violent, and both neighbors committed what can only be termed as minor assaults and batteries on each other. As the referee reported:

"The parties have been next door neighbors since 1968. On July 4, 1991 they were involved in an altercation arising from an ongoing disagreement about the location of their common lot line. Plaintiff [Fannie M. Moler] and her husband were in their backyard pulling Defendant's [Omer Beach, appellee] fence down and rocks from a fallen rock wall were being exchanged from one yard to the other. Defendant *intentionally threw a rock in the direction of the Plaintiff,* which rock hit Plaintiff on the top of the right foot. While there was no incision

on Plaintiff's foot, nor intense bleeding, the foot became red and swollen, manifesting a very visible wound."[1] (Emphasis added.)

The referee then concluded that Moler had been "injured by a rock thrown intentionally" by Beach, and that the injury to Moler's right foot "was a proximate result of [Beach's] intentional act."

After the referee's report, and objections to it by both parties were filed, Nationwide Insurance Company filed a motion to intervene as a party defendant. Nationwide had already provided the defense for Beach under a reservation of rights, which stated "please be advised that Nationwide contends or may later contend that you are not entitled to coverage under the policy if it is determined that the damages alleged in this lawsuit were expected or intended by you." Nationwide sought intervention in order to protect its interests regarding the intentional injury issue. It conceded that it could still file a declaratory judgment action even without intervention, but that intervention at that time would serve judicial economy. Nationwide's motion to intervene as a defendant was not opposed and was granted by the trial court.

The appellant then engaged in a novel procedure of filing an interrogatory *to the referee,* which stated:

"INTERROGATORY: Do you find that when Defendant Beach intentionally threw a rock in the direction of the Plaintiff, he either expected or intended to injure her?"

We find nothing in the Civil Rules that provides for interrogatories to referees but, nevertheless, no one objected to the procedure, including the court, and the referee did respond as follows:

"ANSWER: No, there was insufficient evidence to show expectation or intention of injury."

Appellant then filed an objection to this answer. Appellant's objection, as well as objections to the referee's report and recommendations which had been previously filed by Beach, and Moler's response to such objections were subsequently considered by the trial court, which filed its judgment entry on August 2, 1994. With respect to the issue on appeal, appellant's interrogatory and the referee's answer, the court found as follows:

"As to Nationwide Insurance Company's objection to the answer of the Referee to the Request for Interrogatory, the Court does not find said objection well-founded and therefore OVERRULES same.

---

1. Counsel for Mr. Beach notified us of his death prior to oral argument, but that unfortunate fact does not affect the issue or the interests of the parties on this appeal.

"The Defendant relies upon the case of *Western Reserve Mutual Casualty Company v. Macaluso* (1993), 91 Ohio App.3d 93, 631 N.E.2d 1079. Therein, Mr. Macaluso was claiming coverage under the policy containing an identical exclusion at issue in the case at bar. Mr. Macaluso, a Vietnam veteran and an excellent marksman and hunter, stood approximately ten (10) feet from a door, pointed a loaded shotgun in the direction of someone entering the doorway and shot. The Court, in *Macaluso*, found that under the circumstances of that case, Mr. Macaluso should have expected such an action to result in injury. The Court held that the exclusion applied and that the insurer had no duty to defend. *Macaluso* does not stand for the proposition that all intentions to act must necessarily equal an intention to injure. The Court must look to the facts of the individual case and this Court has done so in this case at bar by reviewing all the evidence before it in overruling the Defendant's objections."

The sole error assigned by the appellant on this appeal is that the trial court erred in overruling its objection to the referee's answer to its interrogatory. Appellant's argument is that because the referee, in her report, found as a fact that Beach intentionally threw a rock in the direction of Moler, who was injured thereby, that Beach must be presumed to have intended, or at least expected, the injury.

The parties recognize that the controlling case in Ohio on the issue is *Physicians Ins. Co. of Ohio v. Swanson* (1991), 58 Ohio St.3d 189, 569 N.E.2d 906, which held that in order to avoid coverage on the basis of an exclusion for expected or intentional injuries, the insurer must demonstrate that the injury itself was expected or intended. In *Swanson*, the trial court found that the defendant did not intentionally injure his victim and stated, " 'The evidence does not support a finding that William Swanson shot the B–B gun with the intent to injure anybody or with the belief that such injury was substantially certain to occur.' " *Id.* at 190, 569 N.E.2d at 908. The court of appeals reversed on the grounds that it was the nature of the act of the insured, rather than the result of the act, such as the specific injury to the victim, which determines what coverage will apply, citing an earlier decision of the Supreme Court, *Preferred Risk Ins. Co. v. Gill* (1987), 30 Ohio St.3d 108, 30 OBR 424, 507 N.E.2d 1118. Finding its decision to be in conflict with that of the decision of another appellate district, the case was certified to the Supreme Court, which reversed the appellate court on the ground that *Gill* and the actual text of the insurance policy indicate "that it is the resultant *injury* which must be intended for the exclusion to apply to deny coverage." (Emphasis *sic.*) *Swanson*, at 191, 569 N.E.2d at 909. The Supreme Court extensively analyzed decisions from other jurisdictions in support of its decision and cited from several, including the following:

"While interpreting an exclusion for 'property damage caused intentionally by or at the direction of the insured,' the Supreme Court of Pennsylvania stated that 'the vast majority of courts which have considered such a provision have reached the conclusion that before the insurer may disclaim liability, it must be shown that the insured intended by his act to produce the damage which did in fact occur. Annot., 2 A.L.R.3d 1238 (1965). We subscribe to such a view. There is a very real distinction between intending an act and intending a result and the policy exclusion addresses itself quite clearly to the latter.' *Eisenman v. Hornberger* (1970), 438 Pa. 46, 49, 264 A.2d 673, 674. * * *

" * * *

"Likewise, in *Farmers Ins. Group v. Sessions* (1980), 100 Idaho 914, 607 P.2d 422, the court held that for an exclusion for injuries intentionally caused to operate, the insurance company must demonstrate that the insured acted ' * * * for the purpose of causing injury in the person or property in which it resulted.' *Id.* at 918, 607 P.2d at 426. In so holding, the court rejected the insurer's argument that the policy requires nothing more than an intentional act for the exclusion to operate. The court stated as follows:

" ' * * * Such an interpretation would radically alter the scope of insurance company liability. On an exclusion such as this one, the company would have no liability for the baseball intentionally thrown which accidentally breaks the neighbor's window, the intentional lane change which forces another driver into the ditch, or the intentionally started trash fire which spreads to the adjacent lot. Countless other examples are imaginable, in all of which the insurance company could rely on such an exclusion to avoid liability because the course of conduct of the insured involved intentional acts. * * *' *Id.* at 917, 607 P.2d at 425." *Swanson,* at 192–193, 569 N.E.2d at 909–910.

Appellant argues that we should ignore the referee's finding of fact that there was insufficient evidence to show expectation or intention of injury and reverse the trial court on the grounds that "when an insured intentionally discharges a weapon in the direction of someone known to be within range, [the] insured must at the very least expect such an [action will] result in injury." Normally, presumptions "never obtain against positive facts, though they often supply the wanted facts." *Wallace's Lessee v. Miner* (1834), 6 Ohio 367, 370. We have here a factual finding by the referee that there was no evidence of intent to injure and, as the trial court carefully pointed out in its judgment entry, the referee, in its report and, therefore, necessarily in its response to the interrogatory, gave "particular attention to the credibility of the witnesses."

Appellant argues that we should in the case at hand infer an intent to commit injury "as a matter of law." Such an inference will be what is known as a conclusive presumption, which is one that may not be overcome by contrary

evidence no matter how strong, *e.g.*, "everyone knows the law." The appellant relies on two lines of authorities which actually apply such a conclusive presumption even after the holding in *Swanson*.

First, it has been held that an intent to injure can be presumed when the insured fires a gun at the victim at point blank range. *W. Reserve Mut. Cas. Co. v. Macaluso* (1993), 91 Ohio App.3d 93, 631 N.E.2d 1079; *W. Reserve Mut. Cas. Co. v. Eberhart* (1991), 81 Ohio App.3d 93, 610 N.E.2d 481.

A second line of authorities has held that intent to injure may be presumed in cases of sexual molestation of children. *Auto–Owners Ins. Co. v. Brubaker* (1994), 93 Ohio App.3d 211, 638 N.E.2d 124; *Westfield Ins. Co. v. Roberts* (1993), 88 Ohio App.3d 532, 624 N.E.2d 343; *Young v. All Am. Ins. Co.* (1992), 81 Ohio App.3d 493, 611 N.E.2d 421.

The appellant invites us to extend the application of the inferred intent rule beyond the scope of the sexual assault cases, but we decline the invitation. Outside of gunshots at point blank range and the sexual molestation of children, Ohio courts have adhered to the *Swanson* rule that intent to injure or its expectation are questions of fact, and intent or expectation is not to be presumed as a matter of law. See, *e.g.*, *Nationwide Mut. Ins. Co. v. Machniak* (1991), 74 Ohio App.3d 638, 600 N.E.2d 266; *Lumbermens Mut. Cas. Co. v. S–W Industries, Inc.* (C.A.6, 1994), 23 F.3d 970. Even when the insured denies an intent to injure, it would defy common sense not to presume intent to injure when a gun is fired at very close range directly at the victim. In such cases, injury is virtually inevitable.

Cases of sexual molestation of children are probably even clearer, for the act and the injury are "virtually inseparable." *Worcester Ins. Co. v. Fells Acres Day School* (1990), 408 Mass. 393, 558 N.E.2d 958, listing decisions. As the court in *Auto–Owners Ins. Co. v. Brubaker, supra,* stated:

"There is overwhelming support for appellee's position that there exists a permissible inference of intent to injure arising as a matter of law when an adult engages in sexual activity with a minor. The trial court notes that thirty-one states have adopted this view. Additionally, at least two Ohio courts of appeals are in accord with this position. *Allstate Ins. Co. v. Lobracco* (Nov. 24, 1992), Franklin App. Nos. 92AP–649 and 92AP–650, unreported, 1992 WL 356270, *Young v. All Am. Ins. Co.* (1992), 81 Ohio App.3d 493, 611 N.E.2d 421. The reasoning of these cases is inescapable. Any adult of normal intelligence and competence knows, or should know, that sexual conduct or contact with a minor is virtually certain to cause injury to that minor. The law will presume that one who acts with such knowledge intends or expects the consequences of that action." *Brubaker,* 93 Ohio App.3d at 214–215, 638 N.E.2d at 126.

 The intentional act of directing a rock towards a victim is a far cry from shooting a victim at point blank range. The intention of the rock hurler may simply be to slam the rock into the ground in front of the victim (possibly the situation here since the victim was hit in the foot) or simply toss it short of the victim as a warning or insult of some kind. In any case, we find that the trial court was well within its discretion in not stretching the presumption of intent to the facts of this case, and its decision was based upon competent, credible evidence as presented by the referee following a full hearing. In such a case, we give deference to the findings and conclusions of the trial court, and we will not substitute our judgment for that of the trial court. *Myers v. Garson* (1993), 66 Ohio St.3d 610, 614, 614 N.E.2d 742, 745; *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410–411, 461 N.E.2d 1273, 1276.

The judgment is affirmed.

*Judgment affirmed.*

FAIN and GRADY, JJ., concur.