OPINION
Plaintiff-appellant, State Automobile Insurance Company, appeals a decision of the Butler County Court of Common Pleas. The trial court held that appellant has a duty to provide coverage for damages that may be awarded against defendant-appellee, Ruth Anne Clear, Executrix of the Estate of David C. Clear.[1] We reverse the trial court's decision and remand the matter for further proceedings.
On March 23, 1996, David and Sherman Clear were found dead at the side patio area of David's residence. David Clear was sixty-four years old and Sherman Clear, David's father, was ninety-one years old at the time of their deaths. The Hamilton Police Department crime report states that Sherman was found with a gunshot wound at the side of his head. The report also states that David suffered a gunshot wound to his mouth and head area. A .357 Magnum revolver was found laying near David's body. The gun contained two spent shell casings.
An autopsy of the bodies revealed that Sherman's death was caused by severe craniocerebral trauma due to a gunshot wound to the head. The autopsy also stated that there was no fouling caused by gunpowder around the entrance wound. However, a fouling and powder deposit was found on a khaki colored hat at the scene. The hat was owned by Sherman. David's autopsy report stated that his death was also caused by a gunshot wound to the head. The bullet entrance wound was located in the roof of his mouth, and the bullet traveled from the front to the back of his skull.
Shortly after David and Sherman Clear's deaths, three letters dated March 23, 1996 were found. The letters were addressed to David's wife, Ruth Anne Clear, and David's two sons, Mike and Matthew Clear. The letters were signed by David. The letter to Mike states in part:
 You will have to some-how forgive me for this drastic-step that need's [sic] done. Sherman — my dad has ruined all of our lives, I have to do this. It will take you Matt some-time to get on with your lives. * * * I love you 
wanted to go thru life with all of you but Sherman has taken a very big hole out of me. I can't take it no longer. He will out live all of you if I don't do this.
On May 21, 1996, a complaint was filed in the Butler County Court of Common pleas by H. Vincent Walsh, administrator of Sherman Clear's estate. The complaint alleged that David Clear wrongfully caused the death of Sherman Clear, and that Sherman Clear's death was the direct and proximate result of a gunshot wound inflicted by David Clear. On November 7, 1996, appellant filed a complaint for declaratory judgment because David owned an insurance policy with appellant. Appellant requested a declaratory judgment declaring:
 1) That the rights and obligations of [appellant] be determined pursuant to the provision of the State Auto insurance policy issued to David C. Clear and Ruth Anne Clear.
 2) That the events set forth in the allegations of the Complaint of H. Vincent Walsh, Administrator W/W/A of the Estate of Sherman T. Clear in Case No.: CV96-05-0981, Court of Common Pleas, Butler County, Ohio are not covered occurrences or are specifically excluded under the State Auto insurance policy and that [appellant] does not have a duty to defend the Estate of David C. Clear for any claim which arises out of the allegations of the action filed by H. Vincent Walsh, Administrator W/W/A of the Estate of Sherman T. Clear.
 3) The allegations of the action filed by H. Vincent Walsh, Administrator W/W/A of the Estate of Sherman T. Clear are not covered occurrences or are specifically excluded under the State Auto insurance policy and that [appellant] owes no duty to provide any coverage for damages that may be awarded against the Estate of David C. Clear in that action.
 4) That [appellant] be awarded all further relief to which this Court may deem just and proper.
A trial was held on August 6, 1997. Appellee argued that David intended to help Sherman commit suicide because Sherman was unable to commit suicide himself. Appellee also argued that after David shot Sherman in the head, David then committed suicide. Appellee argued that declaratory judgment should not be granted for appellant because David did not intend to injure Sherman because David's intent was to relieve Sherman's suffering by assisting him in committing suicide.
The trial court rendered a decision in favor of appellee on August 22, 1997. The trial court held that "the exclusion for bodily injury or death either intended or expected by an insured does not apply to the case herein." The court reasoned that "[t]here is no direct evidence in the case herein that David C. Clear either intended or expected to cause bodily injury or death to Sherman T. Clear at any point in time." The trial court also found that coverage should not be excluded by finding that Sherman was not a resident of David's household. Appellant appeals this decision and presents two assignments of error:
Assignment of Error No. 1:
 The Trial Court erred to the prejudice of Plaintiff/Appellant in declaring that the exclusion for bodily injury or death, either intended or expected by an insured, did not apply to the death of Sherman Clear.
Assignment of Error No. 2:
 The Trial Court erred to the prejudice of Plaintiff-Appellant in its determination that Sherman Clear was not a resident of the household of David Clear and that insurance coverage for the death of Sherman Clear was excluded under the State Auto Insurance Policy.
Appellant argues in its first assignment of error that the evidence presented at trial proved that David expected or intended to cause harm to Sherman, and therefore the insurance policy exclusions should apply. We agree.
David's insurance policy with appellant states in part:
Coverage E — Personal Liability
 If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:
 1. pay up to our limit of liability for the damages for which the insured is legally liable; and
 2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.
Section II of the insurance policy provides the following exclusion to coverage:
 1. Coverage E — Personal Liability and Coverage F — Medical Payments to Others do not apply to bodily injury or property damage:
 a. which is expected or intended by the insured.
A plain reading of the policy leads to the conclusion that if the insured (David) expected or intended bodily injury, appellant is not: (1) liable for damages which the insured is legally liable for, and (2) obligated to provide a defense for insured. The question to be resolved, then, is whether David's actions which form the basis of the wrongful death suit against appellee were "expected or intended" by David.
The wrongful death claim filed on May 21, 1996 against appellee alleges that "David C. Clear wrongfully caused the death of Sherman T. Clear."
 A wrongful death claim is not triggered merely by the death of a person, but by "the death of a person * * * caused by wrongful act." Therefore, in order for a wrongful death case to be brought, the death must be wrongful. The fact that a body was discovered and/or that a death took place is irrelevant unless there is proof that a defendant was at fault and caused the death.
Collins v. Sotka (1998), 81 Ohio St.3d 506, 509, citations omitted. The wrongful act that is alleged in the present case was the act of David Clear firing a bullet from a .357 Magnum revolver into the head of Sherman Clear.
"In order to avoid coverage on the basis of an exclusion for expected or intentional injuries, the insurer must demonstrate that the injury itself was expected or intended." Physicians Ins. Co. of Ohio v. Swanson (1991), 58 Ohio St.3d 189, syllabus. It is not necessary for the insurer to prove the crime of murder in order to for the intentional acts exclusion to apply. W. Reserve Mutual Ins. Co. v. Campbell (1996), 111 Ohio App.3d 537,542, following Horath v. Nationwide Mut. Fire Ins. Co. (1996),108 Ohio App.3d 732. "What the insurer does need to prove is that the injury was intended or substantially certain to occur." Campbell, 111 Ohio App.3d at 542.
Questions of intent or expectation of injury involving gunshots at point blank range are presumed as a matter of law. Moler v. Beach (1995), 102 Ohio App.3d 332, 337. "[I]ntent to injure can be presumed when the insured fires a gun at the victim at point blank range." Id., following W. Reserve Mut. Casualty. Co. v. Macaluso (1993), 91 Ohio App.3d 93, and W. Reserve Mut. Casualty. Co. v. Eberhart (1991), 81 Ohio App.3d 93. "Even when the insured denies an intent to injure, it would defy common sense not to presume intent to injure when a gun is fired at very close range directly at the victim. In such cases, injury is virtually inevitable." Moler, 102 Ohio App.3d at 337.
The following evidence was presented concerning whether David expected or intended to wrongfully cause the death of Sherman. Dr. Richard Burkhardt, the Butler County Coroner, testified that when he arrived at the scene, he found two elderly males lying face up at right angles to one another. Burkhardt stated that based upon the hat found at the scene, he concluded that the gun was fired approximately two inches from Sherman's head. Burkhardt also concluded that Sherman was wearing the hat at the time he was shot because the hat had an exit hole on the opposite side of the hole with the powder burns. David had abrasions on his head, and Burkhardt reasoned that these abrasions occurred from David striking his head on the pavement after shooting himself. Burkhardt also testified that there were no exterior signs of damage to Sherman's body. Sherman was found with his leg crossed over the other in a reclined position, with his cane still in his grip on the right side of his body. Burkhardt stated that there were no signs of a struggle. Gunpowder residue was found on David's hand.
Burkhardt also testified concerning David's and Sherman's medical conditions before their deaths. He testified that David had cirrhosis of the liver, left ventricular hypertrophy, an enlarged spleen, and that at the time of his death, David was seriously ill. Burkhardt also testified that Sherman had an eighty percent stenosis of the coronary artery.
Dr. Michael Armentrout had been the Clears' personal physician. He testified by way of a deposition admitted into evidence that based upon his observation of the scene of the shooting, his opinion was that Sherman was lying on his back on the ground when the shot was fired into his head. Armentrout also testified that because of David's torn rotator cuffs in both shoulders, he could not raise his arms above the shoulder level. Armentrout concluded that since Sherman and David were approximately equal height, "the shot would have been applied with the gun being below David Clear's shoulders, and the only way that could have happened was if Sherman Clear was kneeling or laying" down. Armentrout further testified that based upon his observations, David intended to shoot Sherman in the head, and to kill him with that shot.
Ruth Anne Clear, David's widow, testified that she noticed that Sherman was acting differently the day of the shooting. She stated that it seemed to her that Sherman was avoiding her. She also testified that the morning of the shooting, David was coherent but exasperated. She further testified that Louise Clear, Sherman's wife of sixty-nine years, died on March 8, 1995. Ruth Clear claimed that Sherman visited his wife's grave site on a regular basis. Ruth stated that David told her on the day of the shooting that he was going to take Sherman to the cemetery. She also testified that when David and Sherman were going out of the door, Sherman would not look at her. She claimed that this was very unusual because "he never left the house without telling someone he was going or goodbye." She testified that she saw David assist Sherman down the steps as they went out the back door. She also testified that within a few seconds after they went out the back door, she heard an enormous loud noise that was followed five seconds later by a muffled sound.
Ruth also testified that Sherman always had the habit of crossing his legs every time he sat or laid down. Ruth stated that when she found Sherman and David, that Sherman had his legs crossed. She further testified that Sherman once told her "I just wish somebody'd [sic] shoot me and get me out of this. I just hate living alone like this." Ruth also stated that she thought Sherman was not physically capable of taking his own life.
Matthew Clear, son of David and grandson of Sherman, testified that Sherman was having health problems just prior to the shooting. Matthew also testified that one time while he was cleaning two handguns, Sherman "tried to pull the slide back on this little teeny pistol, and he didn't have the strength to even hold on it and pull it back because his hands were so, so weak." Matthew further testified that Sherman stated that "he just wished he could die" on more than one occasion between Thanksgiving 1995 and his death in March 1996. Matthew claimed that one time Sherman broke down crying and told David: "David, you've gotta shoot me." He also stated that because of Sherman's deteriorating health, "he knew as well as we did that it was gonna be another big decision to stick him back in the nursing home or some sort of in-home care or something." Matthew further stated that Sherman was tremendously depressed the last two weeks of his life. He also testified that David and Sherman were acting strangely the morning of the shooting.
Matthew further testified that David did not have his car keys with him when he was found after the shooting. David had told Ruth that he and Sherman were going to the cemetery. Matthew also testified that because of the distance between their home and the cemetery, it would have been impossible for Sherman to walk to the cemetery. Matthew stated that Sherman always had a clean handkerchief, a nitroglycerine pill, and his wallet when he left home. Sherman did not have any of these items on him when he was found after the shooting.
The combination of the above evidence, in conjunction with case law, leads to the logical conclusion that David Clear intended to kill Sherman Clear. It would be reasonable to infer that Sherman and David made an agreement between themselves for David to kill Sherman. A complete review of the record reveals no evidence supporting a different inference. As stated by another court, "it would defy common sense not to presume intent to injure when a gun is fired at very close range directly at the victim." Moler, 102 Ohio App.3d at 337.
Appellee argues that we should find that David's acts should not fall within the insurance policy's exceptions based upon the following reasoning:
 David Clear did not kill Sherman Clear and did not intend, from David's point of view, the death of Sherman Clear. David Clear was simply carrying out his father's wishes to die and, as indicated, he simply aided his father in performing the act that his father himself was incapable of pulling the trigger on a gun and needed his son's assistance.
Appellee similarly argued at the trial court level:
 What was the intent of David Clear that morning? The intent of David Clear was not to harm his father, and I think that's established by the evidence and by the testimony without any question. He did not intend to harm him. He did not intend to kill him. He did not intend to, basically, take his life. What he intended to do was something that Sherman couldn't do himself, and that is, to commit suicide.
It defies logic to argue that David did not intend to harm and/or kill Sherman, and then also argue that David assisted Sherman to commit suicide by shooting him in the head. Even assuming that David's purpose was to assist Sherman to commit suicide, it is plain that David acted directly and intentionally to cause Sherman to be so seriously harmed that it resulted in Sherman's death. Appellee urges this court to create an exception to the previously stated law concerning insurance policies and intentional acts, and have us declare that a person who directly and intentionally engages in conduct that so seriously harms another that it results in the death of the other, ostensibly to assist the other to commit suicide, does not intend to kill or harm that person. We refuse to create judicially such an exception.
We also note that in its decision, the trial court reasoned that it could not find that David either intended or expected to cause bodily injury or death to Sherman because there was no direct evidence to support this conclusion. This reasoning is similarly flawed. "[C]ircumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." State v. Biros (1997), 78 Ohio St.3d 426, 447, certiorari denied (1997), U.S. ___, 118 S.Ct. 574, quoting State v. Jenks (1991), 61 Ohio St.3d 259, paragraph one of the syllabus. For example, to require all defendants accused of murder to be convicted with only direct evidence would raise the evidentiary standard so high that few murderers would ever be convicted. Murder convictions are often built upon circumstantial evidence because few murders are witnessed and few murderers admit to their crime.
Accordingly, we find that the trial court erred in its decision. The evidence in this case overwhelmingly shows that David Clear expected and/or intended to commit bodily injury upon Sherman Clear. Our decision is very similar to another court's decision in W. Reserve Mutual Casualty Co. v. Macaluso (1993),91 Ohio App.3d 93. In that case, Macaluso was ten feet away from an unknown individual entering Macaluso's house when he fired a shotgun in the direction of the individual. The court stated "[w]e fail to see how the above evidence supports a finding that Macaluso did not intend or expect to injure the individual entering his house." Id. at 95. The present case is different from the Macaluso case because David was almost ten feet closer than Macaluso when he caused a bullet from a .357 Magnum revolver to be discharged into Sherman's head.
We therefore hold that the declaratory judgment should have stated that the allegations of the action filed by H. Vincent Walsh, Administrator of the Estate of Sherman T. Clear, are not covered occurrences, are specifically excluded under the State Auto insurance policy, and that appellant owes no duty to provide any coverage for damages that may be awarded against the Estate of David C. Clear. Accordingly, we sustain appellant's first assignment of error. We do not need to address appellant's second assignment because our decision in appellant's first assignment of error renders the second assignment of error moot. App.R. 12(A)-(1)(c).
Judgment reversed and remanded for further proceedings.
YOUNG, P.J., and KOEHLER, J., concur.
[1] We note that H. Vincent Walsh, Administrator WWA of the Estate of Sherman T. Clear, is also a defendant-appellee in this appeal. However, for purposes of clarity, whenever "appellee" is referred to in this opinion, it shall designate only the Estate of David C. Clear.