OPINION
Appellant, Nationwide Mutual Fire Insurance Company ("Nationwide"), appeals the judgment of the Geauga County Court of Common Pleas which adopted the factual findings of an advisory jury and thereafter denied Nationwide's claim that its insured, appellee, John P. Masseria, expected or intended the resulting injury at issue in the case at bar. Thus, the court found that Nationwide was precluded from asserting a claim of intentional tortious conduct which would have relieved it of its obligations to defend or indemnify appellee. For the reasons that follow, we affirm the judgment of the trial court.
Appellee was insured for personal liability pursuant to a homeowners' insurance policy with Nationwide. The policy required Nationwide to pay damages which its insured was legally obligated to pay due to an "occurrence." The term occurrence included bodily injury or property damages resulting from an accident.Excluded from coverage was bodily injury or property damagescaused intentionally by the insured, or at the direction of theinsured, including willful acts the result of which the insuredknew or ought to have known would follow from the insured'sconduct.
Pursuant to his policy with Nationwide, appellee presented a claim for indemnification and a demand for representation following an incident in which he was involved on September 16, 1995. Nationwide provided representation for appellee, but filed the instant declaratory judgment action seeking a determination that it was not obligated to defend or indemnify appellee under the terms of the policy.[1]
The matter was tried to the bench in October 1998 with an advisory panel of jurors pursuant to Civ.R. 39(C)(1). The following evidence was present in the transcript of the proceedings below.
In September 1995, appellee was attending a birthday party for his sister. Also present was John Nally ("Nally"), an acquaintance of appellee. Both appellee and Nally were drinking heavily. When appellee left the party, his sister and others became concerned that he would injure someone if he drove while intoxicated.
Nally attempted to prevent appellee from going towards his car by getting in front of him several times. Because appellee ignored Nally's efforts and continued walking towards his parked car, Nally actually tackled appellee, sat on his chest and pinned his arms to the ground.
According to Nally, appellee was extremely upset and angry at being restrained in this manner. Nally testified that appellee kept lunging at him and attempting to bite him as Nally sat on appellee's chest. At that point, another drunken party guest, Bill Weeks ("Weeks"), tripped and stumbled onto the two men, pushing Nally forward, apparently into appellee's face. According to Nally's trial testimony, appellee then bit him in the face.
Nally not only required numerous stitches, but he was subsequently treated by a plastic surgeon. He filed a civil complaint against appellee in the Cuyahoga County Court of Common Pleas. It was this suit for which appellee sought indemnification and representation from Nationwide.
According to appellee's trial testimony, he did not bite Nally as alleged in the complaint. However, he conceded that he originally believed that he had bit Nally and that he may have admitted the same in both sworn and unsworn statements prior to this trial. His trial testimony was very candid in his admission of his earlier and seemingly contradictory statements.[2]
Appellee further acknowledged that he used the word "bite" on numerous occasions in those earlier statements.
His explanation was essentially that, at the time of the incident, he was very drunk and in shock. As a result, when everyone around him said he had bitten Nally, he accepted that as the truth, even though he had no actual memory of doing so. It was not until later that he found out that there was an issue as to whether the wound was actually a "bite" wound.
Further investigation revealed that the ground on which he had been lying was full of brush, thorns, and brambles. In addition, Weeks testified that he might have stumbled over a tree stake and wire when he fell on Nally. A photograph taken some time later was entered into evidence which showed where a small stake might have been anchored. Appellee claimed the small hole would have been right next to his head. Thus, his theory at trial was that Nally's wound may have been caused by something on the ground next to appellee's head, such as a tree stake.
In this regard, appellee denied Nally's claim that he lunged at Nally and attempted to bite the latter prior to the time when Weeks fell onto the two men. Weeks corroborated this testimony at trial. Weeks also explained his earlier statement that appellee had bitten Nally. His explanation was similar to appellee's, in that he had formed his earlier conclusion because of the voiced assumptions of others at the party, when in fact he did not see exactly what happened when he fell on Nally. Weeks also did not hear Nally say anything about being bitten when he got off of appellee.
Dr. Solomon, the treating emergency room physician, testified that in his opinion the wound he sutured was not a human bite, despite a somewhat elliptical shape. Other medical expert testimony was also presented at the trial. A forensic odontologist expert was called to testify in support of appellee's version of the events. Despite challenging cross-examination, this expert maintained that the wounds Nally suffered were not consistent with those found in human bites.
At the conclusion of all of the evidence, three interrogatories were submitted to the advisory jury.[3] After deliberating, the jury found that Nally was injured as a result of being bitten by appellee. Nevertheless, the jury found that appellee did not intend to injure Nally and that Nally's injuries were not caused by the willful misconduct of appellee. Although not objected to, the trial court adopted these findings of the mock jury as its own, ultimately holding that Nationwide failed to prove that appellee expected or intended the resulting injury such that it was relieved of its duty to defend or indemnify appellee pursuant to the terms of the policy.
Nationwide perfected a timely appeal of this decision, asserting one assignment of error:
 "The trial court committed error by granting judgment to Appellee as a person who bites another's face in order to get free from that person's grasp `intends' or `expects' to cause some injury."
In its sole assignment of error, Nationwide is essentially arguing that the trial court's decision is against the manifest weight of the evidence. In an effort to explain the jury's findings, Nationwide suggests that the jury became overwhelmed by sympathy for Nally and did not want him to go uncompensated. Nationwide essentially argues that when one person bites another person, that conduct is per se intentional conduct as a matter of law. Thus, Nationwide believes that the jury's answers to the special interrogatories are contradictory in nature. Specifically, the first answer revealed that the jury believed appellee bit Nally, but the second two answers indicate that the biting was unintentional.
It is well-established that judgments supported by some competent, credible evidence going to all of the essential elements of the case will not be reversed by an appellate court as being against the manifest weight of the evidence. Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77, 80. In determining whether the judgement below is manifestly against the weight of the evidence, every reasonable presumption must be made in favor of the judgment and the findings of fact. Id. at fn. 3. In particular, if the evidence is subject to more than one interpretation, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment and most favorable to sustaining the verdict and judgment. Id.
In the case at bar, there was conflicting, credible evidence on the issue of whether appellee bit Nally at all, bit Nally accidentally or reflexively, or bit Nally intentionally.
Here we note that the jury obviously found that appellee's teeth accidentally or reflexively made contact with Nally's face. Depending on their assessment of credibility, there was competent, credible evidence to support the jury's determination.
We decline to hold, given the facts and circumstances of this case, that an intent to injure must be presumed as a matter of law whenever one person bites another person. See Moler v. Beach
(1995), 102 Ohio App.3d 332.
We appreciate Nationwide's argument that during this trial, appellee never testified that he either accidentally or instinctively closed both his upper and lower teeth on the flesh of Nally's cheek. His argument was basically that he didn't know what caused Nally's injury, despite his earlier presumption that his own teeth caused the wound. However, at trial, there was no actual denial on his part that his teeth could have unintentionally caused the injury; and certainly those portions of his earlier out-of-court statements which were admitted were consistent with the jury's analysis. Appellee's trial posture was, therefore, not inconsistent with the jury's responses.
Even if the interrogatories did not provide adequate insight into the jury's thinking, we note that the interrogatories were submitted without objection. The jury had, indeed, expressed confusion over the original instructions that asked whether appellee's "actions" caused injury to Nally.[4] In order to prevent the jury from considering the fact that appellee had intentionally consumed large quantities of alcohol, and that it was this drinking which started the events at issue in motion, the trial court decided to narrow the conduct at issue.
After discussion with counsel for both parties, the trial court decided to phrase the interrogatories in such a way that the contact between appellee's teeth and Nally's cheek was described as a bite. Thus, the trial court asked the jury to decide whether appellee bit Nally, and then, whether that biting was intentional. Neither party objected to the newly worded interrogatories.
Regardless, as worded, we do not find the interrogatories to be confusing or misleading. The jury's answers are consistent with much of the competent, credible evidence presented in this case. In any event, the interrogatories were not the subject of this appeal.
In light of the foregoing analysis, Nationwide's sole assignment of error is without merit. The judgment of the trial court is affirmed.
FORD, P.J., O'NEILL, J., concur.
[1] Appellee counterclaimed, alleging that Nationwide filed the instant declaratory judgment action in bad faith. The trial court granted Nationwide's motion for summary judgment on the bad faith claims, and appellee filed a separate notice of appeal of that decision. A separate notice of appeal was warranted, rather than the filing of a cross appeal, because the parties are appealing two very different judgments below. In the case at bar, final judgment was rendered on October 20, 1998. In appellee's appeal, an interlocutory order was made which granted summary judgment in Nationwide's favor on appellee's bad faith claim. The interlocutory order became final after the trial court's decision of October 20, 1998. Thereafter, appellee filed a separate notice of appeal of the order in the bad faith case. This court later denied Nationwide's request to consolidate the appeals except for hearing purposes.
[2] The contrary portion of these earlier statements was to the effect that when Nally was pushed forward into his face, he bit him in reaction or by instinct and that it was reflexive and unintentional.
[3] The jury was originally given the following interrogatories:
 "[1.] On or about September 16, 1995, was John Nally injured as a result of the actions of Defendant John Masseria?
 "[2.] If John Nally was injured as a result of the actions of Defendant John Masseria, did Defendant John Masseria intend to injure John Nally?
 "[3.] If John Nally was injured on or about September 16, 1995, was such injury the result of the willful misconduct of Defendant John Masseria?"
The trial court subsequently amended the first two interrogatories by substituting the words "being bitten by" in place of the original phrase "the actions of."
[4] See footnote 3, supra.