JOURNAL ENTRY AND OPINION
This is an appeal from an order of Judge Christine McMonagle granting summary judgment in favor of third-party defendant/appellee State Farm Fire and Casualty Company (State Farm), on the basis that State Farm's homeowner's insurance policy did not provide liability coverage for personal injury claims against defendant Scott Sahler. Appellants Michael J. and Maria Pfeiffer contend that the injuries he sustained were caused by an accident, that Sahler did not intend to injure him and Sahler's intent was a material issue in dispute. We do not agree, and we affirm and remand.
On July 2, 1995, Sahler, then age seventeen years, driving around with his brother and two other friends, stopped at the home of Ryan Wagner, in Strongsville, Ohio so that one of the group could use the Wagners' telephone. Pfeiffer, then almost sixteen years old, was a friend of Sahler's and was at the Wagner home. As Sahler sat in the parked car, Pfieffer approached and an argument began over whether Sahler had vandalized Pfeiffer's home.[1] He insulted Sahler, then ran into the Wagner house and Sahler followed him. The argument verbally escalated until Pfeiffer and Sahler were arguing nose to nose. When Pfeiffer put up his hands Sahler pushed him and punched him one time in the face, causing a fracture of the nasal bone and a one-half inch laceration. As a result of the injury, the resultant cosmetic deformity and airway obstruction, Pheiffer required a closed reduction and surgery to correct his septal deviation.
On April 8, 1998, Pfeiffer, still a minor, and his mother filed suit against Sahler and his father, Gary Sahler, alleging the following claims:
 1. That Sahler, negligently or otherwise, assaulted Pfeiffer;
 2. That Gary Sahler, knowing of his son's violent and aggressive tendencies, negligently failed to seek appropriate treatment or counseling for him;
 3. That Maria Pfeiffer had been damaged through medical expenses and loss of consortium; and,
 4. That Sahler's actions, being wilful and wanton, warranted an award of punitive damages.
A Homeowners/Renters policy of liability insurance issued to Gary Sahler was in effect in 1995, and State Farm provided the Sahlers a defense against this complaint under a reservation of rights. On November 19, 1998, State Farm was granted leave to intervene in order to file a declaratory judgment action to determine its responsibility for the Sahlers' defense of the suit or its duty to indemnify should a judgment be rendered against either father or son.
State Farm, in its motion for summary judgment, argued that Sahler's acts were excluded from coverage under its policy because Pfeiffer's injuries were expected or intended, or alternatively, were the result of Sahler's willful and malicious acts. Both Pfeiffer and Sahler responded that the circumstances surrounding the incident were such that, whether Sahler's actions were intentional or merely negligent, they were questions of material fact subject to resolution by a jury. On May 18, 1999, the court granted summary judgment in favor of State Farm and after that ruling, the attorney provided by State Farm for the Sahlers' defense was granted leave to withdraw. The case was later submitted to arbitration and, after an appeal from an award, was set for trial.
On May 18, 2000, with the complaint still pending, the judge amended her 1999 summary judgment decision to incorporate Civ.R. 54(B) no just reason for delay language to permit an interlocutory appeal. This court dismissed the appeal because the grant of summary judgment failed to declare the rights of the parties but reinstated the appeal upon journalization of the judge's explicit finding that State Farm had no duty to defend or indemnify the Sahlers[2] on the Pfeiffers' claims.
The Pfeiffers' sole assignment of error states:
 THE TRIAL COURT IMPROPERLY GRANTED SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS/APPELLEES, STATE FARM INSURANCE COMPANY [sic].
Under State Farm's Homeowner/Renter insurance policy issued to Gary Sahler and through which he and his son were insureds, liability coverage applies in the following circumstances:
 "If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will:
 1. pay up to our limit of liability for the damages for which the insured is legally liable; and,
 2. provide a defense at our expense by counsel of our choice * * *."
An "occurrence", as defined by the policy, means an accident resulting in bodily injury or property damage. Personal liability coverage contained in the policy, however, does not apply to "bodily injury or property damage * * * which is either expected or intended by an insured; or * * * is the result of willful and malicious acts of an insured."
State Farm maintains that Sahler intentionally struck Pfeiffer in the face and, therefore, there was no "occurrence" for which liability coverage could apply. It also argues that Sahler knew or should have known that striking someone in the face could cause injury and that injury to Pfeiffer was either expected or intended. Moreover, since the Pfeiffers' complaint alleges that Sahler's actions were willful and wanton and merited punitive damages, State Farm asserts that Sahler's intent may be inferred by law because of the nature of his act and, since the policy excludes coverage for damages "expected or intended" by an insured, it has no duty to either provide a defense or indemnify Sahler should a judgment be rendered for Pfeiffer.
Pfeiffer counters that, since Sahler has testified at deposition that he did not mean to hurt him, a question of material fact exists as to his intent, which can only be resolved by a jury evaluation of Sahler's credibility. He also contends that since the two of them were high school friends until the altercation, that relationship implies a lack of intent by Sahler to injure when he pushed him and then punched him in the face. Finally, he argues that Sahler's intent when he pushed and punched cannot be inferred as a matter of law based merely upon the nature of his conduct.
 "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274."[3]
State Farm must demonstrate that the injury itself was expected or intended in order to avoid providing liability coverage on the basis of such an exclusion.[4] A court may infer intent to injure from the commission of the act itself, however, if the harm and the act are so closely related that they are "virtually inseparable."[5] By definition, acts which are intended to cause harm, or inferred to be intended to cause harm, are not accidental.[6]
Appellate courts confronted with circumstances of a physical assault in a civil case have uniformly held that the conscious punching or kicking of another in the course of an altercation constitutes an inferred intended act. We held in Steverding, supra, where a man was kicked in the face as he lay on the ground, that "[c]learly, given the facts of this case, the act of violently kicking a prone individual directly in the face can be construed as intending to cause harm, or, more importantly, can be inferred as intending to cause harm to that individual." Id. Other courts have similarly reasoned that the only reason to throw a punch is to injure the intended recipient. "`There is no legitimate purpose, absent self-defense, for the intentional, non-consensual striking of someone in the face with one's fists. The purpose of such an act is to hurt the person punched.'"[7] Indeed, when evaluating whether an expected or intended injury is inherent in punching another person in the face, it was observed, "[i]t simply belies common sense for [the assailant] to suggest that he intended to hit [the victim] but did not intend any bodily injury."[8]
In support of his position, Pfeiffer directs us to Physician's Ins. Co. v. Swanson,[9] where a boy fired a BB gun at a nearby sign intending to scare a group of teens and one of the group was struck in an eye and blinded. In ruling that, despite similar exclusionary language in the policy as in the case sub judice, the insurer had a duty to defend and indemnify the boy, the court found that, although it was clear the boy had intended to discharge the gun, the carrier had failed to present sufficient evidence that he had intended to injure, as opposed to scare. In Moler v. Beach,[10] neighbors, feuding over their common boundary line, argued over the placement of a stone wall. The aggrieved neighbor began to dismantle the wall and toss the stones in the direction of the adjacent property owner and one of the stones struck the plaintiff's foot, causing injury. The court held that, while the act of throwing rocks is intentional, the purpose of throwing the rocks may have been for reasons other than to injure the plaintiff. "The intention of the rock hurler may simply be to slam into the ground in front of the victim * * * or simply toss it short of the victim as a warning or insult of some kind."[11] The insurer was, therefore, obligated to defend and indemnify the defendant. Swanson and Moler demonstrate that a punch to the face is to be seen as an inferred intended act for, while an innocuous motive may attach to the intentional shooting of a BB gun or throwing a rock, there is but one purpose in balling one's fist and throwing it with force in the direction of another's face — to injure.
We review the granting of summary judgment de novo.[12] In this case heated words were exchanged, Sahler followed Pfeiffer to continue the conversation, the dispute escalated until they were both in an openly hostile posture, face to face, and Sahler pushed and then punched Pfeiffer. Sahler claimed that he did not mean to hurt Pfeiffer and struck him in self-defense after Pfeiffer raised his hands in what Sahler believed to be a menacing manner, but we have found such a self-defense claim under similar circumstances without merit.[13] A punch to the face is an action which, by its very nature, may be inferred by a judge to be an intentional act. Sahler knew or ought to have known that such a blow would cause some degree of injury or harm to his victim as a matter of law. Pfeiffer's injuries were not caused by an occurrence as defined by the State Farm policy and there was no error in finding that State Farm had no duty to defend or indemnify Shaler against the Pfeiffers's claims.
Judgment affirmed and case remanded.
It is ordered that the appellee recover from appellant costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, P.J., and TERRENCE O'DONNELL, J., CONCUR.
[1] Apparently, someone had recently thrown eggs and/or toilet paper in or around Pfeiffer's home.
[2] All claims against Gary Sahler, then deceased, were settled and dismissed with prejudice on March 19, 1999.
[3] Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,369-370, 696 N.E.2d 201, 204.
[4] Physicians Ins. Co. v. Swanson (1991), 58 Ohio St.3d 189,569 N.E.2d 906, syllabus.
[5] Gearing v. Nationwide Ins. Co. (1996), 76 Ohio St.3d 34, 37,665 N.E.2d 1115, 1118 (dealing with the act of child molestation). See also Western Reserve Mut. Ins. Co. v. Campbell (1996) 111 Ohio App.3d 537,542, 676 N.E.2d 919, 923, and Western Reserve Mut. Ins. Co. v. Macaluso (1993), 91 Ohio App.3d 93, 95, 631 N.E.2d 1079, 1080-1081 (dealing with firing a gun at another at point-blank range).
[6] State Auto. Ins. Co. v. Steverding (June 1, 2000), Cuyahoga App. No. 77196, unreported.
[7] Aguiar v. Tallman (Mar. 5, 1999), Mahoning App. No. 97 CA 116, unreported, citing the trial court's journal entry decision.
[8] United Ohio Ins. Co. v. Vanosdol (June 1, 1993), Warren County App. Nos. CA92-08-073 and CA92-08-075, unreported. See, also, Bodager v. Chapman (Mar. 3, 1995), Ottawa App. No. OT-94-031, unreported.
[9] (1991), 58 Ohio St.3d 189, 569 N.E.2d 906.
[10] (1995), 102 Ohio App.3d 332, 657 N.E.2d 303.
[11] 102 Ohio App.2d at 338, 657 N.E.2d at 307.
[12] Doe v. Shaffer (2000), 90 Ohio St.3d 388, 738 N.E.2d 1243.
[13] Lingo v. State Farm Fire Cas. Co. (Dec. 5, 1996), Cuyahoga App. Nos. 69514 and 70753, unreported, we held that an individual, who confronts another aggressively in such a way that a verbal confrontation develops into an exchange of blows, cannot later claim that his actions were taken in self-defense of an attack, and successfully defeat an insurer's declaratory claim upon summary judgment. Sahler did not allege self-defense as an affirmative defense to the complaint.