OPINION
{¶ 1} Appellant, Gary Adkins, Administrator of the Estate of Jeremy Adkins, appeals the decision of the Ashland County Court of Common Pleas that granted Appellee Allstate Insurance Company's ("Allstate) motion for summary judgment finding Allstate had no duty to defend or indemnify Adam Ferguson for the fatal shooting of Jeremy Adkins.
 {¶ 2} The incident giving rise to this appeal occurred on February 14, 2000. On this date, school was canceled due to a snow storm. After Adam Ferguson's parents left for work, Adam decided to ride his four-wheel all-terrain vehicle to the home of his friend, David Whitaker. After riding the four-wheeler for some time, a ball bearing broke. Adam and David were attempting to return the four-wheeler, with the broken ball bearing, to Adam's house when they came upon Chad Wingard and Jeremy Adkins. Chad and Jeremy agreed to help Adam return the four-wheeler to Adam's house.
 {¶ 3} After returning the four-wheeler to the barn where it was stored, the boys went inside Adam's house. The boys played video games for a while and then Chad and Jeremy asked to see Adam's parent's guns which were kept in an unlocked gun cabinet. When Adam decided to show the guns to Chad and Jeremy, Adam knew he was going to "play around with these guys a little bit" and try to scare them. Adam especially wanted to scare Jeremy.
Adam initially removed a shotgun from the cabinet, which he set aside, in order to reach an M-1 carbine rifle. During the previous fall, Adam attempted to shoot the carbine, but it would not fire. After this incident, Adam asked his father if anything was wrong with the gun. Adam's father told him nothing was wrong with it, so Adam assumed he broke it when he tried to fire it. After Adam removed the carbine from the cabinet, Jeremy told Adam his mother was a "whore." Adam then loaded the ammunition clip into the carbine and chambered a round. Adam pointed the gun at Jeremy. While Adam had the gun pointed at Jeremy, Jeremy asked Adam if he was going to shoot him. Adam responded, "yes." Adam then pulled the trigger. The gun fired, fatally striking Jeremy in the face.
 {¶ 4} As a result of this incident, on February 13, 2001, Gary Adkins, as the administrator of the estate of Jeremy Adkins, filed a tort action against Samuel, Karen and Adam Ferguson for the wrongful death of Jeremy. Thereafter, on November 14, 2001, Allstate filed a declaratory judgment action against all parties to the tort action. In this suit, Allstate requested a declaratory judgment that it owed no duty to defend or indemnify Adam Ferguson in the tort action. The trial court sua sponte consolidated the two cases.
 {¶ 5} Allstate subsequently filed a motion for summary judgment. On August 13, 2002, the trial court granted Allstate's motion for summary judgment finding Allstate had no duty to defend or indemnify Adam Ferguson. Gary Adkins timely appealed the trial court's decision and sets forth the following assignments of error for our consideration:
 {¶ 6} "I. The trial court erred in finding appellee had no duty to defend nor indemnify Adam Ferguson after the court presumed Adam Ferguson's intent to commit a battery upon Jeremy Adkins.
 {¶ 7} "II. The trial court erred in finding appellee had no duty to defend nor indemnify Adam Ferguson after the court presumed Adam Ferguson intended to commit an assault/battery upon Jeremy Adkins."
 "Summary Judgment Standard" {¶ 8} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. As such, we must refer to Civ.R. 56 which provides, in pertinent part:
 {¶ 9} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citingDresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107. It is based upon this standard that we review Adkins' assignments of error.
 I, II {¶ 10} We will address appellant's two assignments of error simultaneously as both concern whether the trial court erred when it presumed that Adam Ferguson intended to commit an assault and or a battery upon Jeremy Adkins. Appellant maintains, in both assignments of error, the trial court erred when it concluded Adam intended to commit an assault and or battery against Jeremy as such issue raises a question of material fact for a jury to decide. We disagree.
 {¶ 11} Prior to addressing the merits of appellant's assignments of error, we first address Allstate's contention that Gary Adkins does not have standing to pursue an appeal of the trial court's decision concerning the declaratory judgment action. In support of this argument, Allstate refers to R.C. 2721.02(C). We will not address Allstate's argument as Allstate failed to raise this argument in a cross appeal as required by App.R. 3(C)(1).
 {¶ 12} In its judgment entry granting Allstate's motion for summary judgment, the trial court concluded Adam committed an accidental shooting as a result of an intentional act of scaring Jeremy with a gun. Judgment Entry, Aug. 13, 2002, at 3. The court explained that it used the term "accidental" in the context of intent to scare, under a mistaken belief the gun was incapable of firing. Id. Thus, the trial court concluded Adam committed a battery upon Jeremy as a result of harmful contact with him even though Adam only intended to cause an apprehension of the contact and not the contact itself. Id. The trial court found that because Adam committed a battery, such conduct is not insurable under Allstate's policy. Id. at 4.
Allstate's policy contains the following language concerning intentional or criminal acts:
 {¶ 13} "Losses We Do Not Cover Under Coverage X:
 {¶ 14} "1. We do not cover any bodily injury or property damage
intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person. This exclusion applies even if:
 {¶ 15} "(a) such insured person lacks the mental capacity to govern his or her conduct;
 {¶ 16} "(b) such bodily injury or property damage is of a different kind or degree than intended or reasonably expected; or
 {¶ 17} "(c) such bodily injury or property damage is sustained by a different person than intended or reasonably expected.
 {¶ 18} "This exclusion applies regardless of whether or not suchinsured person is actually charged with, or convicted of a crime." (Emphasis sic.)
 {¶ 19} On appeal, appellant sets forth several arguments in support of his two assignments of error. First, appellant argues a question of material fact exists as to whether Adam intended to cause harmful or offensive contact. Appellant instead contends the death was accidental because Adam believed the gun was inoperable. Thus, appellant concludes Adam lacked intent to cause a battery upon Jeremy. Second, appellant maintains the trial court found, in the judgment entry granting Allstate's motion for summary judgment, that the shooting was accidental, which negates the intent element of the tort of battery. Finally, appellant asserts that a question of material fact exists as to whether Adam intended to scare Jeremy.
The record indicates Adam testified at his deposition that he told Jeremy he was going to shoot him, that he intended to scare him, that Jeremy was scared and that Jeremy told him not to shoot. Deposition Adam Ferguson at 67-71. Adam's testimony clearly establishes the fact that Adam intended to scare Jeremy by his actions. Adam's testimony also establishes the intentional tort of battery. The Restatement of the Law 2d, Torts (1965), 25 Section 13 states:
 {¶ 20} "An individual is liable to another for battery if:
 {¶ 21} "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and
 {¶ 22} "(b) a harmful contact with the person of the other directly or indirectly results."
 {¶ 23} In determining whether a person is liable for a battery, the Ohio Supreme Court has adopted the rule that "[c]ontact which is offensive to a reasonable sense of personal dignity is offensive contact." Love v. City of Port Clinton (1988), 37 Ohio St.3d 98, 99. The Court has defined "offensive" to mean "* * * disagreeable or nauseating or painful because of outrage to taste and sensibilities or affronting insultingness * * *." State v. Phipps (1979), 58 Ohio St.2d 271, 274. The record supports the conclusion that Adam committed a battery because he acted intending to cause an imminent apprehension of contact by pointing the gun at Jeremy's head and the harmful contact occurred when Adam pulled the trigger striking Jeremy in the face.
 {¶ 24} In Physicians Ins. Co. of Ohio v. Swanson (1991),58 Ohio St.3d 189, the Ohio Supreme Court held that:
"In order to avoid coverage on the basis of an exclusion for expected or intentional injuries, the insurer must demonstrate that the injury itself was expected or intended." Id. at syllabus.
 {¶ 25} There exists a distinction between intending an act and intending a result. Appellant argues this distinction by citing the case of Moler v. Beach, 102 Ohio App.3d 332. In Moler, neighbors feuding over a common boundary line argued over the placement of a stone wall. Id. at 333. The aggrieved neighbor began to dismantle the wall and toss the stones in the direction of the adjacent property owner when one of the stones struck the plaintiff's foot, causing injury. Id. The Moler court held that while the act of throwing the rocks was intentional, the purpose of throwing them may have been for reasons other than to injure the plaintiff. Id. at 338. The intention of the rock hurler may have been to simply slam them into the ground in front of the victim or simply toss them short of the victim as a warning or insult of some kind. Id.
 {¶ 26} Although we recognize this distinction, we conclude Adam intended to cause the injury to Jeremy. Because of the inherently dangerous nature of a firearm, the use of which is likely to produce death, the specific intent to kill may be reasonably inferred. State v.Mackey (Dec. 9, 1999), Cuyahoga App. No. 75300, at 7, citing StateWidner (1982), 69 Ohio State2d 267. Further, "the act of pointing a firearm and firing it in the direction of another human being is an act with death as a natural and probable consequence." State v. Turner (Dec. 30, 1997), Franklin App. No. 97APA05-709, at 3. As such, we conclude, because of the inherently dangerous nature of a firearm, that Adam intended to cause the resulting injury when he pointed the firearm at Jeremy's face.
We also disagree with appellant's argument that the trial court found the shooting was accidental. The trial court explained that it used the term "accidental" in the context of an intent to scare, under the mistaken belief that the gun was incapable of firing. Judgment Entry, Aug. 13, 2002, at 3. The trial court never stated, in its judgment entry, that Jeremy lacked the intent required to commit the tort of battery.
 {¶ 27} Finally, at least one court has found that a criminal conviction, in and of itself, may conclusively establish intent for purposes of applying an intentional-acts exclusion. Campobasso v. Smolko, Medina App. No. 3259-M, at 2, 2002-Ohio-3736; Allstate Ins. Co. v. Cole
(1998), 129 Ohio App.3d 334, 336; Allstate Ins. Co. v. Hevitan (Jan. 4, 1996), Medina App. No. 2443-M, at 2. In the case sub judice, Adam was found delinquent for the crime of murder by the Ashland County Juvenile Court. Therefore, because Adam was found delinquent for the crime of murder, Allstate's intentional-acts exclusion applies since the act of murder requires purposeful intent.
 {¶ 28} R.C. 2901.22(A) provides that "[a] person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." Since Adam's conviction for murder involves the culpable mental state of "purposely", Allstate's intentional-acts exclusion applies.
Accordingly, we conclude the trial court properly granted summary judgment to Allstate based upon the intentional-acts exclusion contained in Allstate's policy it issued to Samuel and Karen Ferguson. Although Adam may not have intended to shoot Jeremy, he did intend to cause imminent apprehension of a harmful or offensive contact and did in fact cause such contact, thereby committing the intentional tort of battery. Allstate's policy clearly provides that bodily injury that results from intentional or criminal acts is not covered, even if the injury is of a different kind or degree than intended or reasonably expected.
 {¶ 29} Appellant's First and Second Assignments of Error are overruled.
 {¶ 30} For the foregoing reasons, the judgment of the Court of Common Pleas, Ashland County, Ohio, is hereby affirmed.
By: Wise, J., Gwin, P.J., and Boggins, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Ashland County, Ohio, is affirmed.
Costs assessed to Appellant.