DECISION AND JUDGMENT ENTRY
{¶ 1} Appellants, John Skiadas and Georgette Skiadas, appeal the decision of the Lucas County Common Pleas Court. For the reasons that follow, we affirm.
 {¶ 2} Appellant, John Skiadas, has been involved in running several restaurants and bars in Toledo, Ohio since the 1960's. In 1988, he opened a Mexican restaurant called Pepe's located on Sylvania Avenue in Toledo. *Page 2 
 {¶ 3} In 1993, appellee, Carleton Finkbeiner, was elected to his first term as mayor of Toledo. Appellee served two consecutive terms as mayor between 1994 and 2002.
 {¶ 4} Appellant first met appellee when appellee was campaigning for election in 1993. During appellee's second mayoral term, appellant began to consider opening a second Pepe's restaurant. Appellant proposed opening his second restaurant in the Erie Street Market, a public marketplace for retail shop owners owned and managed by the City of Toledo. On or about March 1, 2000, appellant entered into a lease agreement for a space in the Erie Street Market with a term beginning on June 1, 2000. In order to construct the restaurant in the Erie Street Market, appellant obtained financing from the City and from a private lender. Appellant hired a construction company to do most of the construction work on the restaurant. The construction was to be substantially completed by April 30, 2000. Appellant also hired an architect to prepare the site, demolition, and floor plan for the restaurant and an engineer to provide plans for kitchen layout.
 {¶ 5} The construction project suffered from numerous problems including appellant's failure to pay the contractor, his failure to provide the City with documentation showing that the prevailing wage was being paid, changes to layout and kitchen equipment that delayed the issuance of permits, and several changes in floor plans, kitchen equipment, etc.
 {¶ 6} Because of the construction problems, appellant requested a meeting with appellee. At the time of the meeting, on July 14, 2000, appellee knew that the *Page 3 
construction was only approximately 35 percent completed and that rent had not been paid for two months. Appellant claimed that at the meeting appellee cornered him by the bar in the restaurant, yelled at him using intense profanity, poked him repeatedly, struck him in the chest, and grabbed him behind the neck. Appellant also claimed that appellee threatened to send inspectors after his other Pepe's restaurant and to "ruin" him.
 {¶ 7} Immediately after the incident, appellee left the Erie Street Market. Appellant began to feel chest pains. Two of appellant's friends took him to the hospital. Medical tests showed that appellant had not suffered a heart attack or damage to heart muscles. Appellant's cardiologist did, however, perform a heart catheterization.
 {¶ 8} Appellant was discharged from the hospital on the morning of July 16, 2000. Later that day, appellant experienced chest pains and nausea and went to the emergency room. Appellant's cardiologist determined that appellant was suffering from a gastro-intestinal condition, leading to cramping of the esophagus, which caused chest pains.
 {¶ 9} On August 1, 2003, appellant John Skiadas filed a complaint against appellee and the City of Toledo alleging assault, battery, negligent infliction of emotional distress, and intentional infliction of emotional distress. Appellant, Georgette Skiadas, brought a claim for loss of consortium.
 {¶ 10} A bench trial commenced on September 28, 2004. Appellant testified to feeling extremely shocked by the incident with appellee and terrified that appellee would "ruin" him. He testified that he rarely left his house for two years after the incident and *Page 4 
that when he did he was "like a zombie." Appellant further testified that he had suicidal thoughts, nightmares, lost the ability to run his businesses, and began sleeping in a separate bedroom from his wife.
 {¶ 11} Appellant's psychologist testified that appellant perceived that appellee was his close friend and a person upon whom he could rely. He found appellant to be acutely disturbed as a result of the incident with appellee. He testified that appellant was devastated when appellee breached the perceived friendship.
 {¶ 12} Appellant's psychiatrist testified that appellant suffered from major depression and post-traumatic stress disorder as a result of the incident. He testified that appellant perceived a special relationship between himself and appellee and that the fact that appellant and appellee had only met together a few times, and never in the setting of friendship, was irrelevant to appellant's condition. The psychiatrist testified that appellant was affected so much by the incident not because of what it was, but because his perceived close friend was the person involved. The psychiatrist also testified that appellant idealized his relationship with appellee and that impression of a special relationship with appellee was a significant part of appellant's psychological reaction.
 {¶ 13} At the close of appellants' case, appellees moved for dismissal of all claims pursuant to Civ.R. 41(B)(2). The trial court dismissed the claims for assault, negligent infliction of emotional distress, and loss of consortium. The court further dismissed all claims against appellee, the City of Toledo. The trial court did not dismiss the claims for battery or intentional infliction of emotional distress as to appellee Finkbeiner. *Page 5 
 {¶ 14} The trial continued and appellee took the stand. He testified that he deliberately intended to confront appellant at the July 14, 2000 meeting. He acknowledged that he used profanity toward appellant. Appellee denied grabbing appellant's head, poking appellant in the head, or striking appellant in the chest. Appellee did admit to gesturing or wagging his index finger at appellant. Appellee testified that he never threatened to send inspectors to close appellants' other restaurant. Appellee testified that he did tell appellant that there would be daily inspections to monitor progress at the Erie Street Market construction site. Appellee further testified that he was not aware of appellant's perception of him as a close friend. Rather than intending any harm to appellant, appellee testified that he merely wanted to "move this project forward."
 {¶ 15} Seven people witnessed the incident. Most of the witnesses to the incident were Erie Street Market patrons or employees who were some distance away and did not clearly see or hear the incident. One witness, Susan Hurrell, testified that she saw mostly verbal discussion, but the "mayor might have shaken his finger once or twice." Ms. Hurrell testified that she never saw any physical contact between appellee and appellant. Another witness, Sandra Genzman, testified that she saw appellee "screaming, hollering" at appellant. Ms. Genzman also testified that she did not see any physical contact between the parties. Witness Nicholas Baker testified that he saw appellee standing about a foot or a foot and a half from appellant while he was shouting at appellant. Mr. Baker also testified that he saw appellee poke appellant twice in the chest. *Page 6 
 {¶ 16} Based on the testimony at trial, the trial court ruled in favor of appellee, issuing the following findings of fact and conclusions of law regarding the incident. The trial court found that (1) appellee did express loudly and with much animation his irritation with appellant and told him to comply with inspectors; (2) appellee said there would be daily inspections at the construction project and, if the project did not move forward, appellee would find another tenant for the location; (3) appellee used some profanity; (4) appellee stood extremely close to appellant, often as close as six to twelve inches; (5) appellee waived his hands while speaking, including wagging his finger and pointing at appellant; (6) appellee did unintentionally poke appellant's chest once or twice; (7) appellant suffered no injury as a result of the contact; (8) the catheterization performed on the day of the incident was not the result of the incident with appellee, (9) appellant's condition was progressive in nature and had been building up for years; and (10) appellant's gastro-intestinal condition was long-standing and not the result of the incident with appellee. Appellants now appeal setting forth the following assignments of error:
 {¶ 17} "I. It constituted error to deny the parties a trial by jury.
 {¶ 18} "II. It constituted error to deny appellants' motion for new trial.
 {¶ 19} "III. The trial court erred in applying the wrong standard of decision with respect to intentional infliction of emotional distress.
 {¶ 20} "IV. It constituted error to find that a battery did not occur." *Page 7 
 {¶ 21} Appellants' first assignment of error is appellants' contention that the court erred in denying him a jury trial. The trial court in this case denied appellants a jury trial because counsel for appellants failed to timely deposit the jury fee. The trial court made this decision pursuant to Loc.R. 5.07(F) of the Court of Common Pleas of Lucas County, which provides: "The party who filed the first jury demand must deposit $200.00 by noon on the Friday prior to the scheduled trial date."[1]
 {¶ 22} Appellants in this case paid the deposit at approximately 3:40 p.m. on the Friday before the trial was scheduled to begin. Counsel for all parties requested that the trial court allow a jury trial to proceed. The trial court held a hearing to determine whether or not the local rule should be waived. Following that hearing, the trial court denied the parties' request for a waiver and scheduled a trial date.
 {¶ 23} There is a clear constitutional right to a jury trial in civil law suits. See Section 5, Article I, Ohio Constitution;Seventh Amendment to the United States Constitution. The right to a jury trial may not be impaired, but it "may be subject to moderate and reasonable regulation." Walters v. Griffith (1974), 38 Ohio St. 2d 132, 133. Civ.R. 39(B) states that "notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues." The default under Civ.R. 39(B) is that a jury trial cannot take place if a proper jury demand has not been made, however, the trial court does have discretion to order a jury trial anyway. *Page 8 
 {¶ 24} In Walters, supra, the Ohio Supreme Court upheld a local court rule requiring an advance jury deposit.
 {¶ 25} "Local court rules, requiring an advance deposit as security for the costs of a jury trial and providing that the failure of a party to advance such deposit constitutes a waiver of the right to a trial by jury, are moderate and reasonable regulations of the right of trial by jury, and are constitutional and valid." Id., at syllabus.
 {¶ 26} Appellants assert that the trial court should not have applied Loc.R. 5.07(F) to deny a jury trial, because Loc.R. 5.07(F) does not contain specific language allowing the trial court to waive jury trial for non-compliance with the rule. Loc.R. 5.07(F) plainly requires the payment of a $200 jury deposit before noon on the Friday before the scheduled trial. Loc.R. 5.07(F) is, however, silent on the consequences of failing to pay the deposit on time.
 {¶ 27} In Walters, Loc.R. 9 of the Franklin County Municipal Court provided that "the failure of a party to make the deposit specified by Rule 3 within the ten-day period after filing the jury demand constitutes a waiver of trial by jury." Walters, at 134. The Ohio Supreme Court in Walters never stated that a local rule must provide that the failure of a party to advance a deposit constitutes a waiver of the right to a trial by jury. The court merely held that where a rule does require a deposit and provides that failure to pay the deposit constitutes a waiver, the rule is constitutionally permissible. *Page 9 
 {¶ 28} The Court in Walters relied on Miller v. Eagle (1917),96 Ohio St. 106. We note that Miller is somewhat archaic and addressed an Ohio General Code section rather than a local court rule, however, theMiller rule remains valid. Miller held that a rule "requiring the cost of summoning jurors and the fees of jurors to be secured in advance by the party demanding the jury, is likewise but a moderate and reasonable restriction upon the enjoyment of the right of a trial by jury and is not an impairment of that right." Miller, at 110. As held in bothMiller and Walters, the current rule is that moderate and reasonable regulations are constitutional.
 {¶ 29} Appellants rely heavily on Warrick v. Gaudynski (Oct. 16, 1987), 6th Dist. No. L-86-358 to argue that non-compliance with Loc.R. 5.07(F) did not constitute a waiver of the right to jury trial.Warrick held that "in order for a trial court to consider failure to pay a deposit for a jury as waiver of the right to a jury trial, a local court rule must provide that failure to pay the deposit does in fact constitute a waiver of the right to trial by jury." The Toledo Municipal Court rule at question in Warrick only set the amount for the jury deposit; it did not provide that the right to a jury trial is waived if payment was not made. The trial that gave rise to the appeal inWarrick commenced on September 9, 1986. At the time of trial, Loc.R. 1 of the Toledo Municipal Court Civil Rules was simply a list of costs in civil cases. Regarding jury fees, Loc.R 1 stated simply: "DEMAND FOR JURY TRIAL ................. 10.00." In Warrick, we held that the appellants were denied their constitutional right to a jury trial because the local rule did not provide for waiver of jury trial if payment was not made. The local rule at *Page 10 
question in Warrick is easily distinguishable from Loc.R. 5.07(F). Loc.R. 1 contained no deadline for payment or mandatory language; it simply stated the fee amount. Loc.R. 5.07(F) informs of the amount of the fee, the deadline for payment, and the word "must" in the rule clearly denotes the mandatory nature of the payment. Although Loc.R. 5.07(F) does not expressly contain a term allowing waiver of jury trial for non-compliance, the rule is sufficiently clear to alert parties to the fact that they must pay the jury deposit on time in order to receive a jury trial.
 {¶ 30} The record in this case shows that at a pretrial conference on September 21, 2004, the trial judge personally warned counsel for all parties that failure to timely deposit the jury fee would constitute a waiver of a trial by jury. Moreover, at the hearing wherein the parties requested a waiver of Loc.R. 5.07(F), counsel for appellant admitted that he knew the rule, but simply was too busy to make the jury deposit before 3:40 p.m. on Friday. The trial judge was unwilling to accept counsel's explanation in light of the advance notice that the parties had. The trial judge noted that his criminal bailiff saw counsel for appellant getting his shoes shined at the courthouse at noon on Friday. The trial judge stated that counsel's conduct was a "flagrant neglect of following what's required by attorneys who practice in this court." Based on the foregoing we find that the trial judge did not abuse his discretion in denying appellant a jury trial. Appellants' first assignment of error is found not well-taken.
 {¶ 31} In appellants' second assignment of error, appellant contends that the court erred in denying his motion for a new trial based on the fact that the trial court denied *Page 11 
appellant a jury trial. Based on our disposition of appellants' first assignment of error, appellants' second assignment of error is found not well-taken.
 {¶ 32} In his third assignment of error, appellant argues that the trial court used the wrong standard in deciding whether or not the evidence supported appellant's claim of intentional infliction of emotional distress. Specifically, appellant argues that they were not required to show foreseeability of harm as an element of intentional infliction of emotional distress.
 {¶ 33} The trial court applied the following definition in determining whether appellant met his burden in proving his claim for intentional infliction of emotional distress:
 {¶ 34} "(1) [T]hat the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff, (2) that the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community, (3) that the actor's actions were the proximate cause of the plaintiffs psychic injury, and (4) that the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable man could be expected to endure it." Burkes v.Stidham (1995), 107 Ohio App.3d 363, 375.
 {¶ 35} Regarding extreme and outrageous conduct, the trial court followed Yeager v. Local Union 20 Teamsters (1983), 6 Ohio St.3d 369
citing: *Page 12 
 {¶ 36} "With respect to the requirement that the conduct alleged be `extreme and outrageous,' we find [Restatement of the Law 2d, Torts (1965), Section 46, Comment d] to be instructive in describing this standard:
 {¶ 37} "`* * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
 {¶ 38} "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. See Magruder, Mental *Page 13 
and Emotional Disturbance in the Law of Torts, [49] Harvard Law Review 1033, 1053 (1936). * * *'" Id., at 374-375.
In evaluating appellants' claim under Burkes and Yeager, the trial court found that appellee did not intend and could not have reasonably foreseen that his conduct would have resulted in serious emotional distress. Appellants argue that because of appellee's position of authority over appellant and his ability to adversely affect appellant's interests they were not legally required to establish foreseeability on the part of appellee in order to establish a right of recovery for intentional infliction of emotional distress.
 {¶ 39} Appellants argue that we should rely on Restatement of the Law 2d, Torts (1965), Section 46, Comment e, which states:
 {¶ 40} "The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests. Thus an attempt to extort money by a threat of arrest may make the actor liable even where the arrest, or the threat alone, would not do so. In particular police officers, school authorities, landlords, and collecting creditors have been held liable for extreme abuse of their position. Even in such cases, however, the actor has not been held liable for mere insults, indignities, or annoyances that are not extreme or outrageous."
 {¶ 41} Although not binding on us, Comment e does have some persuasive value. Comment e does indicate that the threshold for extreme and outrageous conduct may be lower in situations involving a tortfeasor with actual or apparent authority over another *Page 14 
person. It was, however, not the extreme and outrageous conduct element that the trial court found lacking, rather it was the intent or foreseeability element. Moreover, appellants argue that foreseeability is not required in the present case because of appellee's position as mayor. Comment e does not discuss the foreseeability element and, therefore, offers no insight into the element of the tort found lacking by the trial court.
 {¶ 42} Appellants also rely on a string of cases involving tortfeasors with a position or relation to the plaintiff that gives the tortfeasor actual or apparent authority over the plaintiff or power to affect the plaintiffs interests. In Meyers v. Hot Bagels Factory (1999),131 Ohio App.3d 82, a storeowner was found liable for intentional infliction of emotional distress when he made sexually derogatory comments to a female customer. The court noted: "In this situation, the insults may amount to less than `extreme outrage' in that the special relationship compels a higher than normal duty of care." Id, at 95. As with Comment e,Meyers speaks to extreme and outrageous conduct, not foreseeability. Regarding foreseeability, the Meyers court states: "Unlike the `normal' tort cases, in a case of purely emotional injury, the tortfeasor does not `take the plaintiff as he finds her' unless he knows of her particular susceptibility." Id, at 94-95. In Meyers, the court viewed the tortfeasor's conduct in the context of a normal customer-proprietor relationship.
 {¶ 43} In the present case, appellant's emotional distress was the result not of any normal or foreseeable relationship; rather it was the result of the special relationship he perceived with appellee. LikewiseFoster v. McDevitt (1986), 31 Ohio App.3d 237; *Page 15 Uebelacker v. Cincom Systems, Inc. (1988), 48 Ohio App.3d 268;Phillips v. Mufleh (1994), 95 Ohio App.3d 289; and Dale v. ChicagoHeights (1987), 672 F. Supp. 330, which are all cited by appellants, address positions of authority, but only as affecting the extreme and outrageous element, not the foreseeability element.
 {¶ 44} The trial court did not evaluate the extreme and outrageous conduct element, the proximate causation element, or the injury element to appellants' intentional infliction of emotional distress claim. The trial court stopped its analysis after finding one element, the intention or foreseeability element, to be lacking. The intention or foreseeability element as defined in Burkes is the applicable rule in the present case. Appellee's position of actual or apparent authority is relevant only in determining whether conduct was extreme and outrageous not whether he intended, foresaw, or should have foreseen severe emotional distress. The Burkes rule requires "that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff." Burkes, at 375. As trier of fact, the trial court found that appellants failed to meet the burden of proof to show intention or foreseeability. After finding one element lacking, the trial court did not need to consider the remaining three elements of the tort. After finding that the trial court used the correct rule in deciding the intention or foreseeability element, we too need not consider the remaining elements. Accordingly, appellants' third assignment of error is not well-taken. *Page 16 
 {¶ 45} In his final assignment of error, appellant argues that the evidence supported a finding that appellee committed battery against appellant when he poked appellant's chest. The trial found that the appellant had failed to prove the element of intent.
 {¶ 46} "A person is `subject to liability for battery when he acts intending to cause a harmful or offensive' unconsented-to contact, and `when a harmful contact results.'" Shadler v. Double D. Ventures,Inc., 6th Dist. No. L-03-1278, 2004-Ohio-4802, ¶ 19, citing Love v. PortClinton (1988), 37 Ohio St.3d 98, 99; Restatement of the Law 2d, Torts (1965) 25, Section 13. There exists a distinction between intending an act and intending a result. In Moler v. Beach, 102 Ohio App.3d 332, neighbors feuding over a common boundary line argued over the placement of a stone wall. Id. at 333. The aggrieved neighbor began to dismantle the wall and toss the stones in the direction of the adjacent property owner when one of the stones struck the plaintiffs foot, causing injury. Id. The Moler court held that while the act of throwing the rocks was intentional, the purpose of throwing them may have been for reasons other than to injure the plaintiff. Id. at 338. The intention of the rock hurler may have been to simply slam them into the ground in front of the victim or simply toss them short of the victim as a warning or insult of some kind. Id.
 {¶ 47} Based on the evidence presented at trial, the trial court determined that appellee's index finger came into contract with appellant's chest once or twice and that appellee was animated during the incident. The trial judge, however, found that there *Page 17 
was no evidence to establish that appellees intended to cause harmful contact. As a reviewing court must defer to the factual findings of the trier of fact regarding the weight to be given the evidence and credibility of witnesses, State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus, we find appellants' fourth assignment of error not well-taken.
 {¶ 48} On consideration whereof, the judgment of the Lucas County Common Pleas Court is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
 {¶ 49} Furthermore, appellee's motion to dismiss appeal is denied
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Arlene Singer, J., William J. Skow, J., Thomas J. Osowik, J. CONCUR.
[1] This is the rule as it existed at the time of the trial. The rule has since been changed. *Page 1