LINDSLEY, Appellee,

v.

ROE et al., Appellants.

[Cite as *Lindsley v. Roe*, 196 Ohio App.3d 596, 2011-Ohio-3235.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–10–1243.

Decided June 30, 2011.

Robert H. Eddy, Colleen A. Mountcastle, and C. Thomas McCarter, for appellee.

Marc J. Meister and Fritz Byers, for appellants.

SINGER, Judge.

{¶ 1} Appellants appeal summary judgments issued to their former lawyer by the Lucas County Court of Common Pleas in a legal-malpractice claim. For the reasons that follow, we affirm.

{¶ 2} Appellants are Gregory Roe and his wholly-owned corporation, Willys–Overland Motors, Inc. Appellants engaged appellee, attorney William R. Lindsley, as trial counsel in a contract dispute. That contest resulted in a joint judgment against appellants for $202,000 plus prejudgment interest, attorney and expert witness fees, and costs. That judgment was affirmed on appeal. *W.O.M., Ltd. v. Willys–Overland Motors, Inc.*, 6th Dist. No. L–05–1201, 2006-Ohio-6997, 2006 WL 3825247.

{¶ 3} On December 28, 2007, appellants sued appellee for legal malpractice, alleging that he had failed to raise the corporate shield that would have protected appellant Roe from personal liability, neglected to provide proper settlement advice, and waived appellants' right to a jury trial by neglecting to file a jury deposit. Appellee counterclaimed for unpaid legal fees.[1]

{¶ 4} Following discovery, appellee moved for summary judgment on all issues. He insisted that he had fulfilled his part of the representation agreement between the parties and should rightfully be compensated according to the agreement. On the malpractice question, appellee argued that the appellants' suit was barred by the one-year statute of limitations for legal-malpractice claims. Alternatively, appellee maintained that, as a matter of law, appellants could never have prevailed on the corporate-shield issue because Gregory Roe signed the underlying contract in an individual capacity as well as in his capacity as corporate

---

1. Appellants dismissed and then refiled their complaint. The second complaint was consolidated with the still pending suit by appellee for unpaid fees.

president. The undisputed facts revealed that advising appellants to tender specific performance prior to judgment would have been futile and appellants could prove no legal injury from having the damages issue tried to the bench rather than a jury.

{¶ 5} Appellants responded with a memorandum in opposition in which they argued that the statute of limitations did not begin to run until, at the earliest, when this court affirmed the judgment of the trial court or, more probably, when the Ohio Supreme Court denied the discretionary appeal; either time was within the one-year statute. On the merits, appellants submitted the affidavit of an attorney who opined that appellee negligently waived the corporate-shield defense with respect to appellant Roe and negligently failed to counsel a tender of specific performance before the money judgment. On the issue of a jury waiver, appellants insisted that they need prove no damages, because the denial of the constitutional right to a jury trial implicates at least nominal damages.

{¶ 6} The trial court concluded that a question of material fact existed as to when the attorney-client relationship between the parties ended. As a result, summary judgment on the statute of limitations was precluded. On the merits, the court concluded that the corporate-shield defense was unavailable to Gregory Roe as a matter of law, because he had signed the original purchase agreement both as president of the corporation and "individually." The court found no dispute in the evidence that, due to the enmity between the parties, appellants never intended to provide specific performance and that such a recommendation by appellee would have been futile. Moreover, the court ruled, appellants had presented no evidence of actual damage that might have flowed from having the damages portion of the case tried to the bench rather than to a jury.

{¶ 7} On these conclusions, the court found that there were no questions of material fact and that appellee was entitled to judgment as a matter of law. As a result, the court awarded summary judgment to appellee on the malpractice claim. In a concurrent judgment, the court also awarded appellee summary judgment for unpaid fees.

{¶ 8} From these judgments, appellants now bring this appeal. Appellants set forth the following two assignments of error:

{¶ 9} "I. The trial court committed reversible error in granting Lindsley's Motion for Summary Judgment and dismissing Roe and Willys' Complaint.

{¶ 10} "II. The trial court committed reversible error in granting Lindsley's Motion for Summary Judgment as to his claim for fees."

{¶ 11} In their first assignment of error, appellants maintain that the trial court erred in awarding summary judgment to appellee. Appellee counters that if we conclude that the trial court should not have granted summary judgment on

the merits, we should examine the trial court's ruling on the statute-of-limitations question.

{¶ 12} Appellate courts employ the same standard for summary judgment as trial courts. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198. The motion may be granted only when it is demonstrated:

{¶ 13} "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46; Civ.R. 56(C).

{¶ 14} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798, syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleading, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery* (1984), 11 Ohio St.3d 75, 79, 463 N.E.2d 1246. A "material" fact is one that would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.* (1999), 135 Ohio App.3d 301, 304, 733 N.E.2d 1186; *Needham v. Provident Bank* (1996), 110 Ohio App.3d 817, 826, 675 N.E.2d 514, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202.

{¶ 15} "To establish a cause of action for legal malpractice based on negligent representation, a plaintiff must show (1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss." *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 674 N.E.2d 1164, syllabus. In establishing the causal link between conduct and damage, the legal malpractice plaintiff must, at a minimum offer "some evidence of the merits of the underlying claim." *Id.* at 428. In certain circumstances, such as when the legal-malpractice plaintiff alleges that he or she would have received a more favorable outcome if the claim had been tried to conclusion rather than settled, "the plaintiff must establish that he would have prevailed in the underlying matter and that the outcome would have been better than the outcome provided

by the settlement." *Environmental Network v. Goodman Weiss Miller, L.L.P.*, 119 Ohio St.3d 209, 2008-Ohio-3833, 893 N.E.2d 173, syllabus.

### Statute of limitations

{¶ 16} Although it is an ancillary issue, the parties have devoted a substantial amount of argument both in the trial court and here on whether appellants brought their suit within the statutorily prescribed time for legal-malpractice suits.

{¶ 17} R.C. 2305.11(A) provides that an action for malpractice "other than an action upon a medical, dental, optometric, or chiropractic claim * * * shall be commenced within one year after the cause of action accrued." " '[A]n action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later.' " *Smith v. Conley*, 109 Ohio St.3d 141, 2006-Ohio-2035, 846 N.E.2d 509, ¶ 4, quoting *Zimmie v. Calfee, Halter & Griswold* (1989), 43 Ohio St.3d 54, 538 N.E.2d 398, syllabus.

{¶ 18} Appellee insists that the "cognizable event" that should have put appellants on notice of a potential legal-malpractice claim was the May 18, 2005 judgment that found a breach of the mediation agreement and awarded damages. Indeed, appellee points out, appellant Roe authored a memorandum in preparation for an appeal of that decision, in which he enumerated all of the concerns that eventually became the basis for the malpractice suit. Moreover, according to appellee, he was never retained to handle an appeal and never billed for work on the appeal, as appellants engaged different counsel for the appeal. It was appellate counsel who prepared, signed, and filed the notice of appeal. Thus, appellee argues, the judgment in the trial court effectively ended the attorney-client relationship.

{¶ 19} The end of that relationship, appellee insists, was no later than June 14, 2005, the date appellate counsel filed the notice of appeal. Accordingly, appellee maintains, R.C. 2305.11(A) dictates that the suit would have been timely if only it had been filed by June 14, 2006. Since the suit was not initiated until December 28, 2007, appellants filed well out of rule, according to appellee.

{¶ 20} Appellants respond that although appellee did not charge for his services beyond the trial court judgment, he agreed to consult with appellate counsel throughout the appeal. According to an affidavit by appellant Roe, appellee in fact provided such consultation on several occasions as the appeal

progressed. Indeed, appellee was a named co-counsel on the appeal, and he received filings in the case up to and including the petition for discretionary appeal to the Ohio Supreme Court.

{¶ 21} On these facts, appellants argue, the attorney-client relationship for this transaction did not end until the Ohio Supreme Court denied the discretionary appeal on August 29, 2007, or, alternatively, on December 29, 2006, the date this court announced its affirmance of the trial court's judgment. Using either of these dates, appellant contends, brings the initial filing of the case within the one-year statute of limitations.

{¶ 22} The trial court concluded that because appellee was entitled to judgment on the merits of the case, the question of the statute of limitations was moot. Alternatively, the court stated that the competing factual accounts before the court gave rise to an issue of material fact that would preclude an award of summary judgment on statute-of-limitations grounds.

{¶ 23} We agree with the trial court. A determination of when an attorney-client relationship for a particular transaction ends is ordinarily a question of fact. *Cook v. Caruso*, 6th Dist. No. L–05–1208, 2006-Ohio-1982, 2006 WL 1047483, ¶ 27, citing *Omni–Food & Fashion v. Smith* (1988), 38 Ohio St.3d 385, 388, 528 N.E.2d 941. It is only when the evidence presented is clear and unambiguous, so that reasonable minds may only reach a single conclusion, that the matter may be decided as a matter of law. *Id.* It cannot be said that such clarity exists here.

## Corporate Shield

{¶ 24} The genesis of this dispute was a contract for the sale of auto parts between appellants and W.O.M., Ltd. *W.O.M., Ltd. v. Willys–Overland Motors, Inc.*, 2006-Ohio-6997, 2006 WL 3825247, at ¶ 4. When problems with the performance of that agreement arose, W.O.M. brought suit and the matter was referred to a mediator who fashioned a settlement. *Id.* at ¶ 6–7. When performance issues on the settlement agreement arose, W.O.M. resumed its suit, amending its complaint to allege a breach of the settlement agreement, and sought summary judgment. When the original trial court granted the motion, appellants appealed. Appellants assigned as error, inter alia, the judgment against appellant Roe personally. *Id.* at ¶ 18.

{¶ 25} In our consideration of this asserted error, we noted that appellant Roe:

{¶ 26} "was an individual signatory to the original 1997 installment contract. He was individually named a defendant in this lawsuit and never asserted his corporate shield. He also individually asserted counterclaims in this suit. Appel-

lee further notes that the draft settlement agreement prepared by appellants' attorney contained a signature line for Roe in his individual capacity.

{¶ 27} "Ordinarily errors that are not brought to the attention of the court by objection or otherwise are waived and may not be raised on appeal. *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 43 [322 N.E.2d 629]. Appellant Roe had ample opportunity to raise and prove his right to corporate protection in the proceeding below, but did not. As a result, he cannot now be heard to say that the court erred on a matter it was never asked to consider." *Id.* at ¶ 61–62.

{¶ 28} In the malpractice action that underlies the present appeal, appellants asserted that appellee was negligent in failing to raise the corporate-shield defense to the first trial court and the result of this negligence was the personal judgment against appellant Roe. Appellants supported this assertion with the affidavit of an attorney who opined that because the original installment contract included the lease of property owned individually by appellant Roe, his second signature on the contract above a line labeled "individually" was for the property lease only, not as a signatory of the whole contract.

{¶ 29} The trial court found the opinion of appellants' attorney witness "contrary to law" and thus insufficient to raise a question of material fact. The court noted that Gregory Roe signed the purchase agreement twice: once as President of Willys–Overland Motors, and on another line as "Greg Roe, Individually." The court reasoned that since one who signs a contract individually is presumptively personally bound by the terms of that contract and a lack of ambiguity in the contract makes parol evidence to the contrary inadmissible, appellant Roe was personally liable on the contract. As a result, there was no corporate shield to be raised, and appellee could not have been negligent in failing to do so.

{¶ 30} There are many reasons why attorneys do not raise defenses. First and foremost of these reasons is that the defense is without merit. A corporate officer who signs a contract twice, once in the name of the corporation and again in only the officer's name, with no corporate designation or corporate title, is personally bound under the contract. *Vulcan Corp. v. Freeland,* 1st Dist. No. C–050637, 2006-Ohio-4033, 2006 WL 2241665, ¶ 15. Under the parol-evidence rule, if a contract is unambiguous, a court may not use extrinsic evidence to interpret the agreement. *Id.* at ¶ 11. Thus, it is improper to consider any assertion that appellant Roe's individual signature applied only to the lease portion of the agreement unless there is ambiguity within the four corners of the original purchase agreement. The trial court found no such ambiguity, nor do we. As a result, appellant Roe was personally bound by the contract and any corporate-shield defense was without merit.

## Specific Performance

{¶ 31} The second area of legal malpractice that appellants assert relates to what they characterize as appellee's negligent failure to recommend that appellants tender specific performance on the mediation agreement before a money judgment was rendered. According to appellants, had such a recommendation been offered and followed, neither appellant would have been subject to a damage award or an award of attorney fees.

{¶ 32} Part of the original installment agreement between appellants and W.O.M. was that the automobile parts that comprised the most substantial asset in the deal would remain in, and W.O.M. would operate out of, a commercial building owned by appellant Roe. When the dispute between appellants and W.O.M. erupted, appellants barred W.O.M. from the building. Shortly thereafter, W.O.M. initiated suit. *W.O.M.*, 2006-Ohio-6997, 2006 WL 3825247, at ¶ 5.

{¶ 33} The settlement conference occurred several months after W.O.M.'s ejection from the building and resulted in a fixed purchase price for the parts inventory of $187,000, with ten percent down and a five-year payout. The agreement was to be personally guaranteed by W.O.M.'s president. *Id.* at ¶ 7. While a formal settlement document was being prepared, W.O.M. sought access to the parts inventory to verify what was being purchased. Appellant Roe refused to allow W.O.M. to verify the parts inventory and came forward with a new demand that for the deal to be consummated, W.O.M.'s president would need to provide a personal financial statement. W.O.M.'s president declined to provide the statement.

{¶ 34} As this stalemate continued, W.O.M.'s president made a cash offer on the parts, which was promptly declined by appellant Roe. After this, W.O.M. advised appellants that further delay would result in resumption of the suit.

{¶ 35} Appellant Roe's lengthy deposition in the present matter clearly reveals that appellant Roe and his settlement lawyer had ongoing tactical discussions during this time as to the merits of a settled business solution to the dispute, as opposed to "fight[ing] the good fight until the bitter end, irrespective of cost." There is a strong inference that when appellant Roe terminated the services of his settlement attorney and engaged those of appellee, who describes his practice as "80% litigation," appellant Roe had elected the latter course. Indeed, appellant Roe does not deny that this was his decision. He only testified that like almost every other aspect of this transaction, he is unable to remember his intention at that time.

{¶ 36} In any event, after appellee entered his appearance in September 2000, he relayed to W.O.M.'s counsel appellants' intent not to go forward with the settlement. *Id.*, 2006-Ohio-6997, 2006 WL 3825247 at ¶ 10. At that point,

W.O.M. moved to enforce the settlement agreement. *Id.* Appellants defended, arguing that the settlement was not sufficiently complete to be binding.

{¶ 37} W.O.M.'s motion was pending for more than a year. On August 20, 2002, the court orally advised appellee and counsel for W.O.M. that it intended to find the settlement valid and binding and that appellants were in breach. According to appellant Roe, immediately after receiving this news, appellee suggested that appellants offer to provide specific performance of the settlement agreement. Appellants and appellee would later discover that on the previous day W.O.M. had withdrawn its request for specific performance and substituted a demand for damages on the settlement breach, plus interest and attorney fees.

{¶ 38} As a second area of malpractice, appellants insist that appellee should have counseled them to tender specific performance of the settlement agreement prior to the day the court's ruling was announced. Had appellee done so and had appellants followed that advice, appellants maintain, they would have saved substantial amounts in interest and attorney fees that were awarded.

{¶ 39} The trial court concluded that there was no evidence to indicate that appellant Roe was willing to settle at any time prior to the day the W.O.M. court announced its determination of appellants' breach of the settlement agreement. It is unrefuted that appellants were aware of the costs and consequences of not settling. There is nothing in the record to suggest that they would settle no matter who advised them to do so. Indeed, there is much in appellant Roe's deposition testimony to suggest that he had a deep enmity toward W.O.M.'s president and little to suggest any inclination to compromise. Absent any reasonable possibility that appellants would act on the advice appellants insist should have been rendered, we can see no deficiency in appellee's behavior.

### Denial of a Jury Trial

{¶ 40} When W.O.M. filed its complaint against appellants, it requested a jury trial. When appellants answered W.O.M.'s complaint and interposed their own counterclaim, they too requested a jury trial. Indeed, up until the date set for the trial on damages, appellee and appellant Roe prepared for a jury trial, parsing voir dire questions and preparing jury instructions. According to appellant Roe, on the day the trial was scheduled, the court advised appellee that neither party had timely posted the jury fee required by local rule and that the jury would be dismissed. Appellants fault appellee for not checking in advance as to whether the deposit had been paid and suggest that appellee's negligence in failing to do so denied them their constitutional right to a jury trial.

{¶ 41} Appellee disagrees with appellant Roe's account. According to appellee, he was pleased with the visiting judge who had been assigned to hear the damages trial, believing that this judge was more capable of critically evaluating

complicated valuation testimony than a jury. In appellee's deposition, he testified that he discussed this with appellant Roe and that appellant Roe had agreed with appellee's strategy to not attempt to obtain a jury. Appellee testified that his objection to the dismissal of the jury was nothing more than an attempt to preserve an appealable issue.

{¶ 42} Ordinarily, competing versions of events such as these would create a question of material fact that would preclude summary judgment. Appellee insists, however, that even were we to believe appellant Roe's version of events, appellee is still entitled to judgment as a matter of law. Appellee argues that it is incumbent on appellants to show damages on their claim. No such damages can be shown, appellee maintains, because it is impossible to prove that a properly instructed jury would return a different verdict, or one more favorable to appellants, than a judge who heard the same case. Since appellants cannot prove this necessary element of their claim, appellee asserts that he is entitled to judgment as a matter of law.

{¶ 43} While not conceding the point, appellants respond that appellee is still not entitled to summary judgment because the constitutional violation entitles them to at least nominal damages.

{¶ 44} "There is a clear constitutional right to a jury trial in civil law suits. See Section 5, Article I, Ohio Constitution; Seventh Amendment to the United States Constitution. The right to a jury trial may not be impaired, but it 'may be subject to moderate and reasonable regulation.'" *Skiadas v. Finkbeiner*, 6th Dist. No. L–05–1094, 2007-Ohio-3956, 2007 WL 2216966, ¶ 23, quoting *Walters v. Griffith* (1974), 38 Ohio St.2d 132, 133, 311 N.E.2d 14. "Local court rules, requiring an advance deposit as security for the costs of a jury trial and providing that the failure of a party to advance such deposit constitutes a waiver of the right to a trial by jury, are moderate and reasonable regulations of the right of trial by jury, and are constitutional and valid." *Id.* at syllabus. Notwithstanding such rules, however, it remains within the discretion of the trial court to grant a jury trial, if requested to do so, even in the face of such a deemed waiver. *Skiadas*, citing Civ.R. 39(B).

{¶ 45} Damages from the deprivation of a procedural due process right, such as the right to a jury trial, are not ordinarily allowed "'without evidence of actual loss.'" *Carey v. Piphus* (1978), 435 U.S. 247, 262, 98 S.Ct. 1042, 55 L.Ed.2d 252, quoting *Gerz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 349, 94 S.Ct. 2997, 41 L.Ed.2d 789. It would be improper to presume that the result of a jury trial would obtain a different result than a trial to the bench. See *Jones Motor Co. v. Holtkamp* (C.A.7, 1999), 197 F.3d 1190. As a result, the burden is on

appellants to present evidence of damages derived from their denial of a jury trial.

{¶ 46} Appellants have simply put forth no evidence of any damages derived from the case being tried to the bench rather than to a jury. Citing in a footnote *C.R. Withem Ent. v. Maley*, 5th Dist. No. 01 CA 54, 2002-Ohio-5056, 2002 WL 31116720, they argue that they are, at the least, entitled to nominal damages. *Withem*, however, involved a claim of mental anguish, and the issue was not whether the trial court should have awarded nominal damages, but whether the court should have awarded more than nominal damages. The appeals court concluded that absent proof of damage, the trial court did not err in awarding no more than nominal damages. *Id.* at ¶ 52. Nothing in that case mandates an award of nominal damages and we cannot find error in this matter for the trial court's omission of consideration of such an award.

{¶ 47} Accordingly, appellants' first assignment of error is not well taken.

### Fees Award

{¶ 48} In their second assignment of error, appellants insist that they should not be liable for the attorney fees incurred in appellee's representation of them because he committed malpractice during that representation. Since we have affirmed the court in its summary judgment to appellee on the malpractice claim, this assignment of error is without foundation and is, accordingly, not well taken.

{¶ 49} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. It is ordered that appellants pay the court costs of this appeal, pursuant to App.R. 24.

Judgment affirmed.

Osowik, P.J., and Handwork, J., concur.